Prob 12 (10/09)
VAE (rev. 5/23)

# UNITED STATES DISTRICT COURT
## for the
## EASTERN DISTRICT OF VIRGINIA

U.S.A. vs. Syed Arham Arbab                    Docket No.  1:25CR00153-001

### Petition on Supervised Release

COMES NOW Bethany Erding, PROBATION OFFICER OF THE COURT, presenting an official report upon the conduct and attitude of Syed Arham Arbab, who was placed on supervision by the Honorable C. Ashley Royal, Senior United States District Judge, sitting in the Court at the Middle District of Georgia on the 25th day of September 2020, who fixed the period of supervision at three (3) years, and imposed the general terms and conditions heretofore adopted by the Court and also imposed special conditions and terms as follows:

### **SEE PAGE 2**

### RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:
#### See Attachment(s)

**PRAYING THAT THE COURT WILL ORDER** a summons to be issued directing that the offender appear before the Court to show cause why supervision should not be revoked.

**Returnable Date:**  08/26/2025 at 10:00 am

---

### ORDER OF COURT

Considered and ordered this ____5ᵗʰ____ day of August 2025 and ordered filed and made a part of the records in the above case.

Patricia Tolliver Giles
United States District Judge

Patricia Tolliver Giles
United States District Judge

---

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on: August 4, 2025

**Bethany Erding** Digitally signed by Bethany Erding
Date: 2025.08.04 12:43:48 -04'00'

Bethany Erding
Supervising U.S. Probation Officer
(703) 299-2305

Place Alexandria, Virginia

**TO CLERK'S OFFICE**

**Petition on Supervised Release**
**Page 2**
**RE: Arbab, Syed Arham**

OFFENSE: Securities Fraud in violation of 15:77q and 15:77x (1 count).

SENTENCE: The defendant was sentenced to sixty (60) months in the custody of the U.S. Bureau of Prisons followed by three (3) years of supervised release and the following special conditions:

1) You shall provide financial information to the Probation Officer upon request;

2) You are prohibited from incurring new credit charges or opening additional lines of credit without approval of the U.S. Probation Office;

3) You shall not enter any gambling establishment, frequent any establishment where gambling is conducted, or engage in any form of gambling or wagering of something of value, including off-shore or Internet gambling, while the court-ordered financial obligation is pending and/or as directed by the Probation Officer;

4) You shall participate in a program of drug and alcohol testing and treatment. The U.S. Probation Office shall administratively supervise your participation in the program by approving the program, administering the testing, and supervising the treatment. You shall contribute to the costs of such treatment not to exceed an amount determined reasonable by the court approved "U.S. Probation Office's Sliding Scale for Services", and shall cooperate in securing any applicable third-party payment, such as insurance or Medicaid;

5) You shall comply with the level (#4) restrictions of the Middle District of Georgia's Technology Access Program under the guidance and supervision of the U.S. Probation Office. A copy of these restrictions will be included as an addendum to the Judgment and Commitment Order;

6) You shall submit your person, property, house, residence, vehicle, papers, computers or other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer. Failure to submit to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition;

7) You are to fully comply with Internal Revenue Service officials regarding any past taxes and/or penalties owed;

8) You must not engage in an occupation, business, profession, or position of financial or fiduciary capacity without the prior approval of the Probation Officer;

9) You are to pay restitution in the amount of $509, 032.12. Payment during the term of supervised release will commence within 60 days after release from imprisonment. During the period of imprisonment, payment shall be at a rate of not less than $25 per quarter and pursuant to the Bureau of Prisons' financial responsibility program; and

10) You are to pay a $100 special assessment fee, due in full immediately.

MODIFICATION: On September 5, 2024, a modification of conditions was approved by the Middle District of Georgia to modify original special condition number 4 to be consistent with the Eastern District of Virginia's computer monitoring condition which states the following:

11) You must comply with the requirements of the Computer Monitoring Program as administered by the Probation Office. You shall consent to the installation of computer monitoring software on any computer to which

**Petition on Supervised Release**
**Page 3**
**RE: Arbab, Syed Arham**

you have access. Installation shall be performed by the probation officer. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of existence of the monitoring software. You shall also notify others of the existence of the monitoring software. You shall not remove, tamper with, reverse engineer, or in any way circumvent the software. You are to pay costs as directed by the probation officer.

TRANSFER OF JURISDICTION: Mr. Arbab expressed a desire to remain in the Alexandria Division through supervision expiration. Therefore, a transfer of jurisdiction was processed with the Court on May 27, 2025, and assigned to Your Honor that same date.

ADJUSTMENT TO SUPERVISION:

On May 29, 2024, upon his release from the Bureau of Prisons, Mr. Arbab began his period of supervision in the Southern District of Georgia, Augusta Division. He initially resided with his family in Martinez, Georgia. Shortly after his release, he requested his supervision be transferred to the Eastern District of Virginia, Alexandria Division, due to his acceptance into the PhD program (Doctorate in Economics) at Howard University located in Washington, D.C. In September 2024, supervision was officially accepted in the Eastern District of Virginia.

Mr. Arbab has made achievements while under supervision, including maintaining a 4.0 GPA while attending college, complying with a substance abuse evaluation in September 2024, where no treatment was recommended, paying restitution, and maintaining stable housing and employment. Furthermore, Mr. Arbab installed computer monitoring software on his internet capable devices as directed. As of this writing, there has been no evidence to suggest he has accessed an unmonitored internet capable device.

On the other hand, as outlined herein, Mr. Arbab has willfully engaged in non-compliance and has not been fully transparent with the U.S. Probation Office.

In or around December 2024, the U.S. Probation Office received information from a third-party alleging Mr. Arbab had access to the third party's financial account for purposes of investing his (the third party's) money, which places Mr. Arbab in direct contradiction of special condition 8. Shortly after this accusation, the third party submitted the following correspondence to the U.S. Probation Office:

> *"Hello, Thank you for reaching out to me. In regard to my previous complaint of Syed Arbab, I wanted to relay that since our conversation Friday Syed has paid back the money for Best Buy and Marshall's and the cash app charges. Therefore since I have been paid back the issue has been resolved. I am satisfied with the outcome. Thank you for your time and if you don't mind sending this to the prosecutor I would appreciate it."* [sic]

During a review of computer activity, this same email correspondence was also found on Mr. Arbab's internet capable device. The third party was asked why Mr. Arbab would have a copy of the aforementioned email, to which the third party alleged Mr. Arbab convinced him to write the email in exchange for paying the third party back the money he was allegedly owed.

Mr. Arbab denied this accusation but did provide evidence, which was also found on his computer monitoring activity, that the nature of their relationship involved assisting the third party with "futures trading".

**Petition on Supervised Release**
**Page 4**
**RE: Arbab, Syed Arham**

For administrative reasons and to further investigate Mr. Arbab's activity in the community, the undersigned assumed responsibility of Mr. Arbab's case in March 2025. Also in March 2025, Mr. Arbab was informed he was not permitted to engage in any pleasure travel outside of the judicial district, primarily due to the fact he had outstanding restitution and recently returned from approved travel. Mr. Arbab was further advised that future travel would be discussed at his appointment with the undersigned. Mr. Arbab acknowledged this directive as evidenced by numerous emails he submitted to multiple probation officers in response to this travel notification.

In April 2025, this writer followed up with the aforementioned third party regarding the previously outlined accusations. The third party explained that Mr. Arbab was permitted access to a portion of his funds for investment purposes. When asked how he met Mr. Arbab, he stated he was introduced to Mr. Arbab through a mutual friend. After further conversation, the third party alleged their mutual friend served prison time with Mr. Arbab. According to the third party, he agreed to give Mr. Arbab $1,200 to invest on his behalf, having been told Mr. Arbab could make him money. However, he alleged Mr. Arbab took over $7,200 of additional funds and spent his money at Best Buy and TJ Maxx. He further claimed Mr. Arbab gained access to his Zelle account and transferred funds out of his bank account, resulting in having to close the account. He alleged at least one additional party engaged in an investment agreement with Mr. Arbab around the same time (November 2024). In response, the proper law enforcement authorities were notified for potential further investigation.

Shortly thereafter, the Federal Bureau of Investigations contacted this writer on April 14, 2025, to notify of a separate matter involving a complaint from a financial institution reporting suspicious activity from June 30, 2024, to February 3, 2025. The allegations indicated *"On 20 February 2025, SOFI Technologies, Inc. filed reporting on Syed Arbab based on suspicious activity conducted between 30 June 2024 and 3 February 2025. SoFi Bank reported Syed Arbab and another individual (name REDACTED) for suspicion concerning the source of funds, rapid movement of funds, and possible coordination of two or more individuals. Both individuals used recently created accounts, less than 12 months old, to accept about $46,705.98 from various unknown counterparties via peer-to-peer platforms that included SoFi, Zelle, Cash App, and Stripe. SoFi noted the credit had no discernable source or relationship to possible employment. Furthermore, both individuals are listed together as conducting transactions with eachother as well as similar counterparties." [sic]*

Upon receiving this notice, Mr. Arbab's computer activity was further reviewed and revealed the defendant traveled to Florida without approval and had access to an unreported investment account as well as at least eleven (11) *unexpired* credit card/bank accounts.

On April 24, 2025, this writer met with Mr. Arbab and reviewed his conditions of supervision. Upon reviewing his conditions, the defendant was given an opportunity to be forthcoming about any, and all, activity that violated his conditions of supervision. While the defendant acknowledged offering investment advice to the third party mentioned above, he initially denied taking his money or having access to his accounts. Mr. Arbab eventually admitted to having access to the third party's date of birth, social security number, and bank account to "pay myself back". Mr. Arbab further admitted he was introduced to this third party through an inmate, who was in custody for murder, with whom he previously served prison time. Mr. Arbab initially denied working with another investor. It was not until this writer questioned Mr. Arbab further did he admit to working with another person who invested approximately $7,000.

During this same conversation, Mr. Arbab reported working for Wellness Connection as well as a tutor. He denied any additional employment or forms of income. This writer questioned Mr. Arbab further given the number of credit cards observed during computer monitoring and considering the information, or lack thereof, provided on his January 2025 financial affidavit. In response, Mr. Arbab claimed the cards observed during the computer

Petition on Supervised Release
Page 5
RE: Arbab, Syed Arham

monitoring review were from before supervision commenced, except one card which a third party permitted him to access due to their "partnership". This writer questioned him on this statement given he reported no further income or employment. It would later be revealed he created an LLC in March 2024 with this third party and the third party permitted him to use his corporate credit card. When questioned about an investment account observed during computer monitoring review, he admitted he was accessing his fiancée's investment account. With regards to unauthorized travel, it was not until this writer confronted Mr. Arbab about his travel to Florida, did he acknowledge traveling outside the judicial district without approval.

In response to the above-noted conduct and Mr. Arbab providing inconsistent/incomplete information, he was referred to, and successfully completed, the U.S. Probation Office's Sanction Group conducted on May 21, 2025. Furthermore, Mr. Arbab was directed to complete a subsequent financial affidavit, to include submitting supporting documentation.

As directed, Mr. Arbab submitted an updated financial affidavit with the required supporting documents in May 2025. Upon further review of the supporting documents, the undersigned learned that Mr. Arbab was employed with his fiancée's company, and he was 38% owner of an LLC which was formed in March 2024, prior to his release from Prison.

On July 1, 2025, this writer spoke to Mr. Arbab's fiancée who advised that Mr. Arbab is employed by her company as a 1099 employee.

On July 16, 2025, this writer confirmed with a third party that he permitted Mr. Arbab to use his corporate credit card for their mutual startup company, which was described as an intermediatory for gambling platforms. Given the alleged infancy of this platform (in the development stage per Mr. Arbab), this writer will not be citing Mr. Arbab's involvement with this company as a violation pursuant to his gambling prohibition.

VIOLATIONS: The following violations are submitted for the Court's consideration.

| | |
|---|---|
| **SPECIAL CONDITION 8:** | **ENGAGING IN AN OCCUPATION, BUSINESS, PROFESSION, OR POSITION OF FINANCIAL OR FIDUCIARY CAPACITY WITHOUT THE PRIOR APPROVAL OF THE PROBATION OFFICER.** |
| **SPECIAL CONDITION 3.** | **ENGAGING IN GAMBLING WHILE THE COURT-ORDERED FINANCIAL OBLIGATION IS PENDING.** |
| **SPECIAL CONDITION 1:** | **FAILURE TO PROVIDE ACCESS TO ALL FINANCIAL INFORMATION.** |

In or around November 2024, without the prior approval of U.S. Probation Office and as reported by a third party, verified by computer monitoring activity and later admitted to by Mr. Arbab, Mr. Arbab engaged in conduct, with at least one party, whereby he had access to their financial account in order to engage in "futures trading". He also accessed his fiancée's investment and bank accounts and failed to provide that information to the U.S. Probation Office when initially requested.

Petition on Supervised Release
Page 6
RE: Arbab, Syed Arham

On August 1, 2025, the undersigned reviewed computer activity for date ranges prior to this officer assuming responsibility of Mr. Arbab's case. Computer activity from September 2024 to December 2024 revealed extensive Bitcoin activity, to include the purchasing and withdrawals of virtual currency. There were also conversations between Mr. Arbab and various individuals regarding the transferring or cashing out of funds to and from accounts, including from betting platforms such as "bet365" and "Sportsbook". One financial account was classified as "Sportsbook and Casino" and contained a monetary balance. There was also a conversation between Mr. Arbab and an individual named "Clone Guy Real" which discussed using clone cards to "withdraw and split the cash of the clone card".

At no time did the U.S. Probation Office permit Mr. Arbab to engage in betting or investing, nor was he permitted to be in a position of financial capacity over someone else's money/financial accounts. Furthermore, Mr. Arbab has not reported any Bitcoin account to the U.S. Probation Office and did not submit a complete financial affidavit in January 2025.

**STANDARD CONDITION 3:     LEAVING THE JUDICIAL DISTRICT WITHOUT PERMISSION OF THE U.S. PROBATION OFFICE.**

On March 18, 2025, the defendant was advised no pleasure travel would be considered during his transition to this officer, especially considering his outstanding restitution obligations. A review of computer monitoring activity revealed the defendant traveled to Miami, Florida, on or about April 9, 2025. On April 24, 2025, once confronted with evidence of said travel, the defendant admitted to knowingly traveling out of the judicial district without the permission of the probation officer.

**STANDARD CONDITION 8:     UNAUTHORIZED CONTACT WITH A CONVICTED FELON.**

On April 24, 2025, after being confronted, the defendant admitted to having contact with an individual with whom he served prison time with and who was a convicted felon.

On June 23, 2025, an online, open-source search was conducted and revealed the defendant participated in a podcast interview with an individual who was a convicted felon previously involved in money laundering and wire fraud. When questioned, Mr. Arbab admitted to having unapproved contact with a convicted felon.

At no time did Mr. Arbab request permission from the U.S. Probation Office, both in the Eastern District of Virginia and Southern District of Georgia, to have contact with a convicted felon.

**STANDARD CONDITION 4:     FAILURE TO ANSWER TRUTHFULLY ALL INQUIRIES.**

**SPECIAL CONDITION 1:     FAILURE TO PROVIDE ACCESS TO ALL FINANCIAL INFORMATION.**

On October 3, 2024, the defendant advised his then-assigned officer, Frank Weaver, that he was not employed, further noting he was a full-time student.

On December 2, 2024, Mr. Arbab advised his then-assigned officer, Michelle Suleiman, he earned income tutoring clients. On January 24, 2025, Mr. Arbab advised Officer Suleiman of additional employment with Wellness Connection.

Prob 12 (10/09)
VAE (rev. 5/23)

**Petition on Supervised Release**
**Page 7**
**RE: Arbab, Syed Arham**

On April 24, 2025, this writer inquired about this employment status based on computer monitoring activity. Mr. Arbab confirmed he continued to tutor clients and remained employed by Wellness Connection. However, after further investigation and questioning it was revealed he was a 1099 employee, for his fiancée's company, since 2024 and had access to her investment account as well as her bank account. Furthermore, supporting documentation revealed he was 38% owner of Quantum Wager, LLC, which was formulated in March 2024 and went unreported to the U.S. Probation Office for over a year, even though he was being compensated by using his investor's/business partner's credit card in exchange for his development of the program.

BE/mbp